IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTIN OWSINSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMPHASTAR PHARMACEUTICALS, INC., MYLAN INC., MYLAN LABORATORIES LIMITED, TEVA PHARMACEUTICALS USA INC., PFIZER INC., PHARMACIA CORPORATION, PHARMACIA & UPJOHN LLC, PHARMACIA & UPJOHN COMPANY, LLC, PHARMACIA AND UPJOHN INC., THE UPJOHN COMPANY, PHARMACIA A.B., PLANNED PARENTHOOD WESTERN PENNSYLVANIA ACTION FUND, INC., d/b/a PLANNED PARENTHOOD WOMEN'S HEALTH SERVICES, PLANNED PARENTHOOD WESTERN PENNSYLVANIA ACTION FUND, INC., d/b/a PLANNED PARENT HOOD OF WESTERN PA, PLANNED PARENTHOOD COMMITTEE AND CLINIC OF PITTSBURGH, PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD CENTER OF PITTSBURGH, INC., and PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    No. 23-1340<br><br>Judge Robert J. Colville |
| Defendants. | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

      Before the Court is a Motion to Remand (ECF No. 42) filed by Plaintiff in this matter.  By way of background, Plaintiff originated this case by filing a Complaint (ECF No. 1-1) in the Court

1

of Common Pleas of Allegheny County, and Defendant Mylan Laboratories Ltd. ("Defendant") timely filed a Notice of Removal (ECF No. 1), bringing this matter to this District. The parties have filed various motions and brought several important procedural matters to the Court's attention, but as a threshold issue, the Court will consider independently whether this case, including said motions and procedural considerations, should be remanded to the Court of Common Pleas. On the question of its own jurisdiction and its ability to remand, the Court has jurisdiction to rule pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1447. The Motion has been fully briefed and is ripe for disposition.

### I.     Background

In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motion at issue:

Plaintiff Kristin I. Owsinski is a resident of Bridgeville, Pennsylvania. ECF No. 1-1 ¶ 1. Every three months from 1995 until 2021, Plaintiff received injections of the medication Depo-Provera, or its generic equivalents, from Planned Parenthood. ECF No. 1 ¶¶ 26–27. Depo-Provera is the brand name for medroxyprogesterone acetate. *Id.* ¶¶ 23–24. Its active ingredients include the hormones progestin and progesterone. *Id.* ¶ 24.

Starting in late 2020, Plaintiff began experiencing "blurring vision, . . . frequent headaches, neck pain, and weakness in her arms and legs." *Id.* ¶ 29. Imaging studies later revealed several tumors in Plaintiff's brain. *Id.* ¶ 31. In January and February 2020, Plaintiff underwent multiple surgeries at University of Pittsburgh Medical Center Shadyside and University of Pittsburgh Medical Center Presbyterian, and remained unconscious and in recovery until mid-April. *Id.* ¶¶ 33–34. Later analysis determined that Plaintiff's tumors contained high levels of progesterone, one of the active ingredients in medroxyprogesterone acetate. *Id.* ¶ 35.

Plaintiff alleges that her tumors, as well as various other health complications—including neoplastic meningioma, neurological complications, permanent loss of vision in her right eye, osteoporosis, and osteopenia—were caused by the medroxyprogesterone acetate. *Id.* ¶ 38. Based on these conditions and injuries, Plaintiff brings various claims against two distinct groups of Defendants.

The first group, which Plaintiff terms the "Product Manufacturing Defendants," includes Amphastar Pharmaceuticals, Inc. (a California corporation), Mylan, Inc. (a Pennsylvania corporation), Mylan Laboratories Limited (an India company), Teva Pharmaceuticals USA Inc. (a New Jersey corporation), Pfizer Inc. (a New York corporation), Pharmacia Corporation (a New York corporation), Pharmacia & Upjohn LLC (a New York limited liability company), Pharmacia & Upjohn Company LLC (a New York limited liability company), Pharmacia & Upjohn Inc. (a New York corporation), The Upjohn Company (a New York corporation), and Pharmacia A.B (a New York corporation). *Id.* ¶¶ 2–12. Plaintiff alleges that at all relevant times, the Product Manufacturing Defendants "researched, tested, formulated, patented, designed, licensed, manufactured, marketed, sold and distributed" the medroxyprogesterone acetate that caused her ailments. *Id.* ¶¶ 14, 23.

The second group, called the "Planned Parenthood Defendants," includes Planned Parenthood Western Pennsylvania Action Fund, Inc. (a Pennsylvania nonprofit corporation), Planned Parenthood Committee and Clinic of Pittsburgh (a Pennsylvania nonprofit corporation), Planned Parenthood Federation of America, Inc. (a New York nonprofit corporation), Planned Parenthood Center of Pittsburgh, Inc. (a Pennsylvania nonprofit corporation), and the Pennsylvania Department of Health and Human Services (a Pennsylvania state agency). Plaintiff alleges that, without warning her of the possible complications, the Planned Parent Defendants

administered the injections of medroxyprogesterone acetate that the Complaint claims caused her ailments. *Id.* ¶¶ 26, 28.

The complaint asserts four claims. Count I asserts a claim for strict liability on a failure to warn theory. *Id.* ¶¶ 40–48. Count II asserts a claim for negligence on the theory that Defendants designed a product with dangerous potential side effects, marketed it, and failed to warn consumers about the side effects. *Id.* ¶¶ 49–56. Count III proceeds on the theory that Defendants expressly warranted that Depo-Provera and its generic equivalents were safe, non-defective, and fit for their intended use. *Id.* ¶¶ 57–61. Count IV relies on the merchant provisions of Article II of the Pennsylvania Uniform Commercial Code, arguing that Defendants are merchants and therefore impliedly warranted that medroxyprogesterone acetate was merchantable. *Id.* ¶¶ 62–67.

Plaintiff filed the Complaint with the Court of Common Pleas on June 28, 2023. Along with several other motions, Defendant Mylan Laboratories Ltd. filed its Notice of Removal on July 25, 2023 (ECF No. 1). On August 25, 2023, along with various forms of reply, Plaintiff moved to remand and filed an accompanying Brief in Support (ECF No. 43). On September 8, 2023, Defendant Mylan Laboratories Ltd. filed a Brief in Opposition to the Motion to Remand (ECF No. 58). The Court addresses the Motion to Remand and the Brief in Opposition here.

## II. Legal Standard

"The propriety of removal . . . depends on whether the case originally could have been filed in federal court." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Original federal court jurisdiction can be based either on federal question jurisdiction or on diversity of citizenship jurisdiction. *USAA Fed. Sav. Bank v. Belfi*, No. CV 19-3607, 2020 WL 5763585, at *2 (E.D. Pa. Sept. 28, 2020). Defendant Mylan Laboratories Ltd. removed this matter to the federal courts based on diversity of citizenship jurisdiction, pursuant to

28 U.S.C. § 1332(a), which provides that "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

"Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 102 S. Ct. 2099, 2104 (1982). "[T]here is no presumption that they have subject matter jurisdiction to adjudicate a particular case." *Allison v. Chesapeake Energy Corp.*, No. CIV.A. 12-0900, 2013 WL 787257 (W.D. Pa. Jan. 29, 2013) (quoting *Martin v. Wal-Mart Stores, Inc.,* 709 F. Supp. 2d 345, 346 (D.N.J. 2010)). "When assessing a plaintiff's motion to remand, 'removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Belfi*, 2020 WL 5763585, at *2 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)). As such, the Court views all removals with suspicion and heavily favors remand. "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The facts available to the Court for a remand analysis are limited to those in the record, and such an analysis heavily favors the allegations of one party over the other. *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993). The Court's inquiry "must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must accept as true all factual allegations in the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

    A. **Sum in Controversy**

5

To establish that the matter in controversy exceeds the sum or value of $75,000, the moving party "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operation Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  There is no additional requirement for "evidentiary submissions." *Id.*  Rather, based on the pleadings, courts should use "a reasonable reading of the value of the rights being litigated" to determine whether the sum in controversy meets the diversity of citizenship jurisdiction dollar-amount threshold. *Shiley*, 989 F.2d at 146.

### B.  Establishing Citizenship

A person is considered a citizen of the state where he is, she is, or they are domiciled. *See Gilbert v. David*, 35 S. Ct. 164 (1915).  A corporation or other similar entity (other than an unincorporated association) is a citizen "of every State . . . [in] which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c).

### C.  Diversity of Citizenship

For diversity of citizenship jurisdiction to exist, the party asserting jurisdiction in federal court "must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant are [diverse] citizens." *Am. Motorists Ins. Co. v. Am. Emp'rs Ins. Co.*, 600 F.2d 15, 16 (5th Cir. 1979).  Complete diversity must exist between the adverse parties in the action; that is, the citizenship of each plaintiff must be diverse from that of each defendant.  If any two persons or entities on opposing sides are citizens of the same state, diversity is defeated, and the case would properly belong in state court. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74 (1978).

### D.  Fraudulent Joinder

That said, in determining whether parties have been properly joined for diversity purposes, the Court "is not required to accept blindly the factual allegations of the complaints. It may go beyond the four corners of the pleadings in deciding the issue of fraudulent joinder, that is whether a claim against a defendant is wholly insubstantial and frivolous." *Reith v. Teva Pharm. USA, Inc.*, No. 18-cv3987, 2019 WL 1382624, at *2 (E.D. Pa. Mar. 27, 2019). If the Court does find that a non-diverse party was fraudulently joined simply to bar removal, such joinder will not destroy complete diversity for federal court jurisdiction purposes. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

Still, the removing party has a "heavy burden of persuasion," as courts will find that joinder is fraudulent only when "there is no reasonable basis . . . or colorable ground" to support joining a defendant. *Am. Standard v. Steel Valley Auth.*, 484 U.S. 1021 (1988) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981)). Further, courts consider just the factual allegations in the record and strictly construe them against removal and, once again, resolve all doubts in favor of remand. *Abels*, 770 F.2d at 29.

However, if under governing law a plaintiff is altogether barred from proceeding against a certain defendant, that would be grounds for a federal court to find joinder of that defendant non-colorable. *In re Briscoe*, 448 F.3d 201 (3d Cir. 2006) (finding that where joinder violated the state's statute of limitations, it was not colorable). In other words, if, as a matter of law, a state court would not even entertain the case against a particular defendant, then on the question of diversity jurisdiction, the federal court should find the joinder of said defendant fraudulent. *In re Sch. Asbestos Litig.*, 977 F.2d 764, 851 (3d Cir.1992). "If a district court can discern, as a matter of law, that a cause of action is . . . barred under state law, it follows that the cause fails to present even a colorable claim against the non-diverse defendant." *Briscoe*, 448 F.3d at 219.

### III. Discussion

#### A. The Amount in Controversy

Plaintiff alleges that she sustained numerous injuries, illnesses, and permanent scarring and disfigurement, underwent medical treatments, and attended numerous hospital visits, along with various claims of mental and emotional suffering and reduced or permanently impaired earning capacity.  ECF No. 1-1 ¶ 39(a)–(f).  The Court considers the $75,000 amount in controversy requirement for diversity jurisdiction satisfied.

#### B. The Diversity of the Parties

Plaintiff asserts several claims against various corporate and nonprofit defendants, certain of which she describes as Pennsylvania entities.  ECF No. 1-1 ¶¶ 14–28.  Nevertheless, the Notice of Removal asserts that there is diversity of citizenship, as none of the Pennsylvania entities are plausible defendants, and that Plaintiff fraudulently joined them in order to destroy complete diversity and bar this action from being tried in federal court.  ECF No. 1.  Plaintiff disputes this, claiming that Product Manufacturing Defendant Mylan Inc. is non-diverse, and seeks to remand this action to the Court of Common Pleas.  ECF No. 43.

The undisputed record shows that Mylan Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania.  *See* ECF No. 1-1 ¶ 3; No. 1-2 ¶ 5.  The Court takes notice of this and will proceed with the understanding that Mylan Inc. is a non-diverse entity, and the only question is whether it is properly joined as a party here.

Defendant Mylan Laboratories Ltd. asserts that Mylan Inc. is fraudulently joined, alleging that it "is not and never has been responsible for the research, testing, formulation, patenting, design, licensing, manufacture, marketing, or sale" of medroxyprogesterone acetate.  ECF No. 1 ¶ 32.  Nor, Defendant claims, has Mylan Inc. ever "been responsible for the formulation of labeling

8

or crafting of warnings for," "held an FDA-approved application—whether a new drug application or an abbreviated new drug application—concerning," or "played any role in the promotion or advertisement of" medroxyprogesterone acetate.  ECF No. 1 ¶ 33–35 (internal parentheses and quotation marks omitted).  Defendant also provides a sworn declaration (ECF No. 1-2) from Mylan Inc.'s litigation counsel, Bradley A. Matta, asserting that the company essentially had no involvement with the production, sale, or distribution of medroxyprogesterone acetate.  ECF No. 1-2 ¶ 6–11.

Plaintiff replies that, in at least one instance, Mylan Inc. was represented as a purveyor of medroxyprogesterone acetate, which makes the joinder of Mylan Inc. at least plausible enough to warrant remand.  Plaintiff's Exhibit 1 to her Motion to Remand is a Mylan press release (ECF No. 42-1) from October 2018 announcing to news outlets in Hertfordshire, England and Pittsburgh, Pennsylvania that Mylan will begin providing medroxyprogesterone acetate injections.

It bears noting that it is not obvious to the Court that Mylan Inc. is responsible for this press release.  In fact, Defendant claims that a party not named in Plaintiff's Complaint, the once-Netherlands-based entity Mylan N.V., made the announcement.[1]  But what is and is not obvious to the Court is not the most pertinent issue.

The complicating factor for the Court is that the record currently at least suggests that the only U.S. news outlets to receive the press release were those in Pittsburgh, Pennsylvania, which may support the inference that at the time of the announcement, Mylan was preparing to provide medroxyprogesterone acetate to the Pittsburgh market, potentially through the Pennsylvania-based Mylan Inc.  While Mylan Laboratories Ltd. claims it will be able to prove that Mylan Inc. "did not

---

[1] As Defendant notes, "Mylan Inc. is not mentioned" in the press release at all.  ECF No. 58 ¶ 8 (emphasis removed).  Defendant also points out that the press release was issued some twenty-three years after Plaintiff began receiving medroxyprogesterone acetate injections and was merely announcing that one of the Mylan entities in India had received FDA approval to begin producing a generic form of injectable medroxyprogesterone acetate.

9

design, manufacture, label, distribute, promote, or sell" the drug, the Court finds that this is an issue for the finder of fact to determine at a later time and with different fact-finding standards in place.  ECF No. 1 ¶ 36.

"When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."  *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005)).  While this Court did consider the assertions in the sworn statement Defendant provided, those assertions refuted only the inferences to be drawn from the allegations in Plaintiff's Complaint, not the Plaintiff's exhibit.  The Court disagrees with Defendant's claim that the undisputed record evidence "shows Mylan Inc. has nothing to do with the manufacture or sale of" medroxyprogesterone acetate.  ECF No. 58 ¶ 9.  There is more than "unsupported allegations in the Plaintiff's complaint" to suggest that Mylan Inc. was involved with the local distribution of the drug during some of the time that Plaintiff was receiving it.  *Legg*, 428 F.3d at 1323.

Although the Court concedes that it may do some rudimentary fact-finding to help determine diversity, this undertaking cannot involve weighing the value of the evidence beyond the mere "possibility that a state court would find" a cause of action against Mylan Inc.  *Boyer*, 913 F.2d 108 at 111 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983)).  While Defendant's arguments may sway the Court if it were determining whether Plaintiff had a *plausible* claim, the standard here is closer to simple possibility.  Plaintiff's production of the press release makes it, in the Court's estimation at this juncture, at least possible that evidence will show that the medroxyprogesterone acetate that Mylan said it would soon be providing was made

10

available by way of Mylan Inc.[2]  The Court also finds it possible that evidence presented in a proceeding can prove to the fact-finder's satisfaction that the company distributed the drugs for enough time to have caused, exacerbated, or accelerated Plaintiff's illnesses and injuries.

Defendant vigorously contests the very notion that the Plaintiff will be able to show that Mylan Inc. is a viable defendant.  But, recognizing the "heavy burden" on Defendant here, the Court may not simply accept its word on matters of Mylan Inc.'s (or the Mylan family's) corporate structure, its patent applications, its medical research, or its drug production and distribution practices.  *Boyer*, 913 F.2d 108 at 111.

The Court stresses that the record in this matter does not yet support a finding of liability, and the decision today will not be won by arguments that require fact-finding beyond that necessary to determine whether a party can conceivably be held liable.  *See, e.g.*, ECF No. 58 at 2 ("As a matter of blackletter Pennsylvania law, an entity that played no role in the sale of a product cannot be held liable for harm allegedly caused by a defect in the product." (citing *Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 191 (Pa. Super. Ct. 1993))).  Another fact-finding body may, at the appropriate time, make a determination about what role, if any, Mylan Inc. played in the sale of medroxyprogesterone acetate.

The findings Mylan Laboratories Ltd. wants the Court to make in order to determine that Mylan, Inc. is not a possible defendant require the Court to resolve contested issues of substantive fact.  For our purposes at this point, the Court "must resolve all contested issues of substantive fact in favor of the plaintiff," and from that limited vantage point, the evidence presently before the

---

[2] The Court notes that it takes the "possibility" standard seriously and does not simply deem as possible that which can be imagined.  Claiming that something is possible is an affirmative assertion, which requires some degree of evidence.  There are things, such as square circles or married bachelors, that are indeed impossible.  In this instance, there is evidence to conclude that Mylan Inc. is a possible defendant.

Court favors remand. *Id*. Thus, the Court finds that Defendant Mylan Inc. is, for the limited purpose of ruling on Plaintiff's Motion to Remand, a properly joined non-diverse party.

### IV. Conclusion

For the reasons discussed above, the Court will grant the Plaintiff's motion, and remand this matter to the Court of Common Pleas of Allegheny County. An appropriate Order of Court follows.

BY THE COURT:

*/s/*
Robert J. Colville
United States District Judge

DATED: March 27, 2024

cc: All counsel of record